NIALL P. McCARTHY (SBN 160175)
nmccarthy@cpmlegal.com
ANDREW F. KIRTLEY (SBN 328023)
akirtley@cpmlegal.com
OWAIS M. BARI (SBN 321954)
obari@cpmlegal.com
GIA JUNG (SBN 340160)
gjung@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000
Fax: (650) 697-0577

MATTHEW RIGHETTI (SBN 121012)
matt@righettilaw.com
**RIGHETTI GLUGOSKI, P.C.**
The Presidio of San Francisco
220 Halleck Street, Suite 220
San Francisco, CA 94129
Telephone: (415) 983-0900

EDWARD J. WYNNE (SBN 165819)
Ewynne@wynnelawfirm.com
GEORGE R. NEMIROFF (SBN 262058)
Gnemiroff@wynnelawfirm.com
**WYNNE LAW FIRM**
80 E. Sir Francis Drake Blvd., Suite 3G
Larkspur, CA 94939
Telephone: (415) 461-6400
Fax: (415) 461-3900

*Attorneys for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **STEVE LANDI, RICHARD E. HURLEY**, and **NILA HURLEY**, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> **PROGRESS SOFTWARE CORPORATION; PENSION BENEFIT INFORMATION, LLC, dba PBI RESEARCH SERVICES**; and **THE BERWYN GROUP, INC.,** <br><br> Defendants. | Case No. _____ <br><br> **CLASS ACTION COMPLAINT:** <br><br> 1. **Negligence** <br><br> 2. **Violations of the California Consumer Privacy Act** (Civ. Code § 1798.150) <br><br> 3. **Violations of the California Unfair Competition Law** (Bus. & Prof. Code § 17200, et seq.) <br><br> 4. **Violations of the California Customer Records Act** (Civ. Code § 1798.82) <br><br> 5. **Declaratory Relief** <br><br> **DEMAND FOR JURY TRIAL** |

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION.................................................................................................. 1

II.     JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT........................... 2

III.    PARTIES .......................................................................................................... 2

        A.   Plaintiffs.................................................................................................. 2

        B.   Defendants .............................................................................................. 4

IV.     FACTUAL ALLEGATIONS ................................................................................. 4

V.      CLASS ALLEGATIONS ..................................................................................... 9

VI.     CAUSES OF ACTION ...................................................................................... 13

        FIRST CAUSE OF ACTION ................................................................ 13
        Negligence

        SECOND CAUSE OF ACTION ............................................................ 16
        Violations of the California Consumer Privacy Act
        (Cal. Civ. Code § 1798.150)

        THIRD CAUSE OF ACTION ................................................................ 17
        Violations of the California Unfair Competition Law
        (Cal. Bus. & Prof. Code § 17200, et seq.)

        FOURTH CAUSE OF ACTION .............................................................. 18
        Violations of the California Customer Records Act
        (Cal. Civ. Code § 1798.82)

        FIFTH CAUSE OF ACTION ................................................................ 19
        Declaratory Relief

VII.    PRAYER FOR RELIEF........................................................................ 21

VIII.   JURY DEMAND................................................................................ 22

Plaintiffs Steve Landi, Richard E. Hurley, and Nila Hurley (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, file this Class Action Complaint against Defendants Progress Software Corporation ("PSC"), Pension Benefit Information, LLC dba PBI Research Services ("PBI"), and The Berwyn Group, Inc. ("Berwyn") (collectively, "Defendants"), and allege as follows based on personal knowledge as to their own actions, and upon information and belief as to all other matters.

## I.      INTRODUCTION

1.      In or about May 2023, a group of Russian hackers known by the name "Clop" or "C10p" (the "Russian hackers") found a security flaw in the widely used file transfer software MOVEit owned by Defendant PSC, and which was being used by Defendants PBI and Berwyn to transmit the personal identifiable information ("PII") of millions of people. Because of this flaw, the Russian hackers were able to steal an enormous of trove of Americans' PII, including the PII of Plaintiffs and millions of other pensioners and beneficiaries of the California Public Employees' Retirement System ("CalPERS") and California State Teachers' Retirement System ("CalSTRS"). This massive theft of PII, referred to herein as the "Data Breach," has left Plaintiffs and millions of others vulnerable at continuing and imminent risk of identity theft and a wide variety of other financial harms.

2.      Plaintiffs are CalPERS or CalSTRS members whose PII was stolen because of the Data Breach. CalPERS and CalSTRS use the services of Defendants PBI and Berwyn (collectively, the "PBI Defendants") to help reduce their costs and overpayments, and to manage cybersecurity risks to their members' and beneficiaries' PII. In providing these services, the PBI Defendants use PSC's MOVEit file transfer software to transmit the PII of hundreds of thousands of CalPERS and CalSTRS members and beneficiaries, including Plaintiffs. Given the PII's sensitive nature, the Defendants have a heightened duty to provide a secure digital infrastructure for transmitting and storing PII. This case is about Defendants' catastrophic failure to fulfill that duty.

3.      Plaintiffs bring this lawsuit as a class action, on behalf of themselves and a nationwide class and California subclass of all others similarly situated (collectively, "Class

Members," as further defined herein), for negligence, declaratory relief, and violations of California's Consumer Privacy Act ("CCPA") (Cal. Civ. Code § 1798.150), Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200 et seq.), and Customer Records Act ("CRA") (Cal. Civ. Code § 1798.82). For relief, Plaintiffs seek damages, declaratory relief, equitable restitution, and injunctive relief.

## II.   JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT

4.     The Court has original jurisdiction over this action under 28 U.S.C. § 1332 based on diversity of citizenship. The Court also has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d).

5.     The Court has personal jurisdiction over Defendants because they do significant business in California, including by performing significant services for CalPERS and CalSTRS, which are based in California and are the PBI Defendants' largest clients. The Court also has personal jurisdiction over Defendants because Plaintiffs' claims arise from acts and omissions that occurred in California, and because Plaintiffs and millions of other members of the class and subclass proposed herein are California residents.

6.     Venue is proper because Defendants engage in business activities throughout this district. A substantial part of the events and omissions giving rise to the claim occurred in this judicial district, a substantial part of the property that is the subject of the action (i.e., Plaintiffs' PII) is likewise situated in this district, and because all Plaintiffs reside in this district.

7.     Divisional assignment to the San Francisco Division is proper because a substantial part of the events and omissions giving rise to the claims occurred in San Francisco County, where Plaintiff Landi resides, and because a substantial part of the property that is the subject of the action (i.e., Landi's PII) is likewise situated in San Francisco County.

## III.   PARTIES

### A.   Plaintiffs

8.     At all relevant times, Plaintiff Steve Landi has been a citizen of California, residing in San Francisco County. Mr. Landi's retirement benefits are managed and controlled by CalPERS. His PII was subject to unauthorized access, disclosure, theft, and exfiltration as a result

of the Data Breach. This resulted in an invasion of his privacy interests, loss of value of his PII, and has placed him at imminent, immediate, and continuing risk of further identity theft-related harm, which is a source of worry for Landi. Mr. Landi expects that it will be necessary for him to spend time and money on credit monitoring, including the expense of a credit monitoring service as part of a reasonable effort to mitigate against such harm and will continue to incur such expenses on an ongoing basis. Plaintiff Landi filed a similar class action complaint against Defendants in San Francisco County Superior Court on June 26, 2023, but subsequently decided to seek voluntarily dismissal of his state court complaint, before any of the Defendants had been served with process in that action, in favor of re-filing in federal court via the instant Class Action Complaint.

9. At all relevant times, Plaintiff Richard Hurley has been a citizen of California, residing in Contra Costa County. Mr. Hurley's retirement benefits are managed and controlled by CalSTRS. His PII was subject to unauthorized access, disclosure, theft, and exfiltration as a result of the Data Breach. This resulted in an invasion of Mr. Hurley's privacy interests, loss of value of his PII, and has placed him at imminent, immediate, and continuing risk of further harm from identity theft and other misuse of his PII, which is a source of worry for Hurley. Mr. Hurley expects that it will be necessary for him to spend time and money on credit monitoring, including the expense of a credit monitoring service as part of a reasonable effort to mitigate against such harm and will continue to incur such expenses on an ongoing basis.

10. At all relevant times, Plaintiff Nila Hurley has been a citizen of California, residing in Contra Costa County. She is the wife of Plaintiff Richard Hurley, who has power of attorney of Mrs. Hurley because her health makes it difficult for her to manage her own affairs. Mrs. Hurley's retirement benefits are managed and controlled by CalSTRS. Her PII was subject to unauthorized access, disclosure, theft, and exfiltration as a result of the Data Breach. This resulted in an invasion of Mrs. Hurley's privacy interests, loss of value of her PII, and has placed her at imminent, immediate, and continuing risk of further harm from identity theft and other misuse of her PII, which is a source of worry for Hurley. Mrs. Hurley expects that it will be necessary for her to spend time and money on credit monitoring, including the expense of a credit monitoring service

as part of a reasonable effort to mitigate against such harm and will continue to incur such expenses on an ongoing basis.

**B.    Defendants**

11.     Defendant Progress Software Corporation ("PSC") owns MOVEit, the software at the center of the Data Breach. PSC is incorporated in Delaware and has its principal place in Burlington, Massachusetts.

12.     Defendant Pension Benefit Information, LLC ("PBI"), which does business as PBI Research Services, is a pension plan management services provider that is organized under the laws of Delaware and has its principal place of business in Minneapolis, Minnesota.

13.     Defendant The Berwyn Group, Inc. ("Berwyn") is a pension plan management services provider that is incorporated in Ohio and has its principal place of business in Independence, Ohio.

14.     Defendants PBI and Berwyn announced that they are merging, are in the process of merging, and have operated at relevant times as a single and/or joint enterprise. They are collectively referred to herein as the "PBI Defendants."

## IV.    FACTUAL ALLEGATIONS

15.     CalPERS is the nation's largest public pension fund, managing retirement benefits for approximately 1.9 million state and local government employees, retirees, and their families.

16.     CalSTRS is the nation's second-largest public pension fund with over 900,000 members and beneficiaries that include current and retired public school teachers and administrators (pre-kindergarten through community college) and their families.

17.     CalPERS and CalSTRS use members' and beneficiaries' PII to ensure that they are appropriately distributing pension funds to the right beneficiaries at the right time. They rely on entities like the PBI Defendants for PII verification, death audit, and locate services, as well as uncashed check management.

18.     CalPERS and CalSTRS entrusted the PII of their members and beneficiaries to the care, custody, and control of the PBI Defendants, in material part because the PBI Defendants

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

represent that they rigorously protect the security of their clients' information and PII. The PBI Defendants boldly claim on their website that:

> Protecting and securing the information of our clients and our company is of critical importance to PBI. We recognize that all relationships with current and prospective clients are based upon integrity and trust, and we take our role as custodians of confidential information very seriously.

19.     The PBI Defendants claim on their website that they deploy a sophisticated, multi-layered approach to data security that includes but is not limited to (a) implementing secure development practices, including annual training for their IT team; (b) using real-time scanning of code changes for vulnerabilities; (c) using web application firewalls; (d) using n-tier application architecture; (e) requiring a security awareness training program for all employees at onboarding and on a regular basis thereafter; (f) using data loss prevention tools to alert and block transfers of sensitive data; and (g) using a consolidated "SIEM" solution. SIEM is a security software that gives organizations a bird's-eye-view of activity across their entire network so they can respond more quickly to threats, before business is disrupted.

20.     The PBI Defendants also claim that their data security team manages this multi-layered security architecture by performing over 30 security reviews of their quarterly audit checks to test compliance against security policies. The PBI Defendants further claim that their formalized security program follows the industry-recognized security policy frameworks from the National Institute of Science & Technology (NIST) SP 800-53 and NIST Cybersecurity Framework.

21.     The PBI Defendants, in deploying this digital infrastructure, voluntarily assume responsibility for complete network security. Their website states that they regularly use third parties to test and audit their security controls, that they conduct monthly and quarterly vulnerability assessments and penetration tests of their internal and external network and application security, and that they conduct annual application penetration tests.

22.     The PBI Defendants collect a significant amount of PII. Examples include individuals' full name, driver's license number, passport number, age, race, color, ancestry, national origin, citizenship, religion or creed, marital status, medical condition, physical or mental

disability, sex, gender, gender identity, gender expression, pregnancy or childbirth and related medical conditions, sexual orientation, health insurance information, veteran or military status, insurance policy number, education, employment, employment history, bank account number, credit card number, debit card number, other financial information, browsing history, search history, history of interactions with a websites or web application, and "sensory data" (defined to include "audio, electronic, visual, thermal, olfactory, or similar information"). The PBI Defendants collect this information from sources that include government sources, such as state, local, and federal government entities. Their stated purpose for collecting this information is "preventing fraud or avoiding overpayment of benefits to deceased individuals."

23.     As part of their digital infrastructure, the PBI Defendants use a data transfer software called MOVEit to transmit PII and other data both within the company and with their clients.

24.     MOVEit is owned by Defendant PSC, which claims on its website that "performance, reliability and security are at the heart of everything we [PSC] design;" that MOVEit allows users "to securely exchange information"; and that using MOVEit will "[e]xtend file transfer capabilities to all users to eliminate insecure use of email" and "[r]educe the risk of data loss and non-compliance with a fully-auditable and managed file transfer solution."

25.     Whatever PSC's claims, they could not absolve the PBI Defendants of their responsibility to make good on their own promises to protect and secure the PII and other sensitive information entrusted to PSC's custody, case, and control. If the PBI Defendants had actually performed the rigorous audits, testing, third-party stress tests, and encryption tools that they advertised to their customers on their website and elsewhere, they would have detected the security vulnerabilities in MOVEit and either eliminated those vulnerabilities or open to use a safer software.

26.     At all relevant times, Plaintiffs' and Class Members' PII was being shared and transferred using MOVEit in the PBI Defendants' digital infrastructure.

27.     In or about May 2023, the Russian hackers involved in the Data Breach discovered a Structured Query Language ("SQL") vulnerability in the MOVEit software. Despite all the

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

Defendants' promises of proactive data and network security efforts, none of the Defendants detected this flaw. The Russian hackers used this flaw in MOVEit to steal millions of individuals' PII, including PII in the possession, custody, and control of the PBI Defendants. Subsequent reporting has indicated that the Data Breach result in the theft of PII and other sensitive data not just from the PBI Defendants, but from hundreds of other organizations.

28.     In a statement on its website, PSC admitted that hackers had discovered and exploited a "zero-day vulnerability" in its MOVEit software. This phrase refers to an undetected vulnerability to which PSC's security systems had zero days to respond.

29.     PSC further admitted on its website that:

> a SQL injection vulnerability has been found in the MOVEit Transfer web application that could allow an unauthenticated attacker to gain access to MOVEit Transfer's database. An attacker may be able to infer information about the structure and contents of the database and execute SQL statements that alter or delete database elements, depending on the database engine being used (MySQL, Microsoft SQL Server, or Azure SQL). NOTE: this is exploited in the wild in May and June 2023; exploitation of unpatched systems can occur via HTTP or HTTPS. All versions (e.g., 2020.0 and 2019x) before the five explicitly mentioned versions are affected, including older unsupported versions.

30.     The Data Breach occurred due to Defendants' negligence, recklessness, and other unlawful and unfair conduct in failing to take reasonable steps necessary to secure Plaintiffs' and Class Members' PII. The Data Breach was a direct and proximate result of Defendants' (i) failure to implement appropriate security measures, (ii) failure to conduct adequate security testing and stress testing to discover vulnerabilities in the MOVEit software , and (iii) breach of their express promises and guarantees concerning the reliability and security of the MOVEit software and the PBI Defendants' digital infrastructure.

31.     Defendants kept Plaintiffs' and Class Members' highly sensitive PII in a digital infrastructure that lacked adequate security, making it unreasonably vulnerable to unauthorized access by cybercriminals.

32.     As a result of Defendants' acts and omissions, Plaintiffs and Class Members' PII in the form of full names, social security numbers, dates of birth, and zip codes were accessed and

stolen by unauthorized third parties. Reporting and communications from CalPERS and CalSTRS have indicated that the PII of some of their members' former and current employers, spouses, domestic partners, and children were also accessed and stolen.

33.     Despite the Data Breach having occurred on or about in the last week of May 2023, and despite the PBI Defendants becoming aware of the Data Breach no later than May 27, 2023, the PBI Defendants did not inform CalPERS that there had been a data security incident affecting their members' PII until June 4, 2023. On June 8, 2023, the PBI Defendants representatives formally confirmed that PII of CalPERS members had been affected by the Data Breach.

34.     CalPERS and CalSTRS members and beneficiaries are typically senior citizens, who are prime targets for identity theft and financial scams. As a result of Defendants' lax security, hackers have accessed these members' and beneficiaries' PII in an unencrypted, unredacted, and otherwise readily usable form that is of great value to criminals, who can and do use it to cause Plaintiffs' and Class Members' PII to be accessed by criminals seeking to use it for illegal activities, such as identity theft schemes.

35.     PII is valuable to criminals, as evidenced by the prices they will pay for PII on the dark web. On information and belief, PII and banking information can be sold at a price ranging from $40 to $200 per record per person on the dark web.

36.     At all relevant times, Defendants knew, or reasonably should have known, of the importance of protecting PII and the consequences of a data breach, including the significant privacy and economic harms that foreseeably would be, and have been, imposed on Plaintiffs and Class Members. Because of the Data Breach, Plaintiffs and Class Members face an increased risk of identity theft. As a result, Plaintiffs and Class Members require robust credit monitoring services and software to reasonably mitigate the danger of future identity theft and fraud.

37.     Defendants' acts and omissions have caused and will continue to cause Plaintiffs and Class Members to be in stress, anger, and worry, and to fear for the security of their PII and financial security and safety.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

## V.    **CLASS ALLEGATIONS**

38.    This action is brought by Plaintiffs individually and as a class action under Federal Rule of Civil Procedure ("Rule") 23(a), 23(b)(2), 23(b)(3), and/or 23(c)(4), on behalf of themselves and the following nationwide class of similarly situated persons (the "Class"):

> All persons residing in the United States whose nonencrypted or nonredacted personal information was subject to unauthorized access and exfiltration, theft, or disclosure, as a result of the Data Breach, as defined herein.

39.    In the alternative, Plaintiffs bring this case as a class action under Rule 23(a), 23(b)(2), 23(b)(3), and/or 23(c)(4), on behalf of themselves and the following subclasses of similarly situated persons (the "Subclasses"):

> ***California Subclass.*** All persons residing in California whose nonencrypted or nonredacted personal information was subject to unauthorized access and exfiltration, theft, or disclosure, as a result of the Data Breach, as defined herein.

> ***CalPERS Subclass.*** All persons who are a CalPERS member or beneficiary, and whose nonencrypted or nonredacted personal information was subject to unauthorized access and exfiltration, theft, or disclosure, as a result of the Data Breach, as defined herein.

> ***CalSTRS Subclass.*** All persons who are a CalSTRS member or beneficiary, and whose nonencrypted or nonredacted personal information was subject to unauthorized access and exfiltration, theft, or disclosure, as a result of the Data Breach, as defined herein.

40.    Excluded from the Class and Subclasses are the following individuals and entities: Defendants and their parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendants have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state, or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and subdivisions; all judges assigned to hear any aspect of this litigation, as well as their staff and immediate family members; and any counsel or any party to this litigation.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

41.     Plaintiffs reserve the right to amend or modify the proposed definitions of the Class and Subclasses and to add one or more subclasses based on information obtained during this litigation.

42.     All persons who are members of the proposed Class ("Class Members"), which includes but is not limited to all members of the proposed Subclasses, have suffered injury during the applicable limitations period, or are realistically threatened with future or ongoing injury, caused by Defendants' wrongful acts and omissions alleged herein.

43.     This action is properly brought and may be properly maintained as a class action against Defendants pursuant to the following provisions of Rule 23:

a.     **Numerosity (Rule 23(a)(1)):** The members of the Class and Subclasses are each in the hundreds of thousands of persons, and thus are so numerous that joinder of all members is impracticable.

b.     **Commonality and Predominance (Rule 23(a)(2) and 23(b)(3)):** There are questions of law and fact common to the members of the Class that predominate over any questions affecting only individual members, including:

    i.     Whether Defendants' owed Plaintiffs and Class Members a duty to take reasonable steps to protect Plaintiffs' and Class Members' PII from unauthorized access and exfiltration, theft, or disclosure;

    ii.     Whether Defendants breached of this duty;

    iii.     Whether Defendants' negligence was a substantial factor in causing the Data Breach or the extent of the resulting harm to Plaintiffs and Class Members;

    iv.     Whether Plaintiffs and Class Members were injured by Defendants' conduct complained of herein;

    v.     Whether Defendants' conduct violated the CCPA;

    vi.     Whether Defendants' conduct violated the CRA;

    vii.     Whether Defendants' conduct violated the UCL;

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

viii.   Whether Defendants' conduct was a substantial factor in causing Plaintiffs' and Class Members' damages;

ix.   Whether Defendants failed to timely provide legally required notice of the Data Breach;

x.   Whether the Court should enter declaratory relief in favor of Plaintiffs and Class Members;

xi.   Whether Plaintiffs and Class Members are entitled to preliminary or permanent injunctive relief;

xii.   Whether Plaintiffs and Class Members are entitled to compensator, punitive, or other damages; and

xiii.   Whether Plaintiffs and Class Members are entitled to equitable restitution.

c.      **Typicality (Rule 23(a)(3)):** Plaintiffs' claims are typical of those of all other Class Members. Plaintiffs, like all other Class Members, sustained economic and other injury as a result of Defendants wrongful acts and omissions, which were a substantial factor in causing all of their nonencrypted or nonredacted personal information to be subject to unauthorized access and exfiltration, theft, or disclosure in the Data Breach. Plaintiffs and Class Members were and are similarly or identically harmed by the same wrongful conduct of Defendants.

d.      **Adequacy of Representation (Rule 23(a)(4)):** Plaintiffs will fairly and adequately represent and protect the interests of all Class Members and have retained competent and qualified counsel with extensive experience in data breach and consumer class action litigation. There are no material conflicts between the claims of the Plaintiffs and the Class Members that would make class certification inappropriate. Counsel for Plaintiffs and the putative Class will vigorously prosecute the claims of all putative Class Members and are willing and prepared to serve the Court and the putative Class in a representative capacity.

44.     This action is properly brought and may be properly maintained as a class action pursuant to Rule 23(b) for the following reasons:

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

a.      **Class Action Status (Rule 23(b)(1)):** Class action status is appropriate under Rule 23(b)(1)(A) because prosecution of separate actions by each of the thousands of persons who are Class Members would create a risk of establishing incompatible standards of conduct for Defendants and inconsistent results for the Class Members. Class action status is also appropriate under Rule 23(b)(1)(B) because prosecution of separate actions by individual Class Members would create a risk of adjudication with respect to those individual Class Members that, as a practical matter, would be dispositive of the interests of other Class Members or would substantially impair or impede those other Class Members' ability to protect their interests.

b.      **Declaratory and Injunctive Relief (Rule 23(b)(2)):** Certification under Rule 23(b)(2) is appropriate because Defendants, on the same or substantively similar grounds, violated Class Members' common law and statutory rights, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

c.      **Predominance and Superiority (Rule 23(b)(3)):** Certification of the Class and Subclasses under Rule 23(b)(3) is appropriate because questions of law or fact common to Class Members and Subclass Members, including but not limited to those questions listed above, predominate over any questions affecting only individual members of the Class or Subclasses, and because class action treatment is superior to the other available methods for the fair and efficient adjudication of this controversy, for the following non-exhaustive reasons:

i.      Given the various legal issues involved in this action, the expense of litigating the claims, and the relatively small amounts of money at issue for each Class Member, few, if any, Class Members would decide to seek, or could afford to seek, legal redress for the wrongs that Defendants have committed against them individually, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

ii.      This action will ensure an orderly and expeditious administration of Class Members' claims and foster economies of time, effort, and expense, and ensure uniformity of decisions;

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

iii.     Without a class action, Class Members will continue to suffer injury, and Defendants' unlawful conduct will continue;

iv.     This action does not present any undue difficulties that would impede its management by the Court as a class action; and

v.     The injuries suffered by individual Class Members are relatively small compared to the burden and expense of individual prosecution needed to address Defendants' wrongful conduct alleged herein. Individualized litigation presents a potential for inconsistent or contradictory judgments. In contrast, a class action presents far fewer management difficulties; allows the hearing of claims that might otherwise go unaddressed; and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

45.     **Issue Certification (Rule 23(c)(4)):** Certification of issues of liability and declaratory, equitable, and legal relief under Rule 23(c)(4) is appropriate because these issues are common to all Class Members, including but not limited to whether Defendants' conduct violated their common law or statutory obligations to Plaintiffs and Class Members, and whether said conduct was a substantial factor in causing Class Members' harms. Resolution of such common issues on a class-wide basis will materially advance the disposition of the litigation as a whole.

46.     The Class Members are ascertainable from Defendants' own records, and there is a well-defined community of interest in the questions of law or fact alleged herein since Defendants violated the rights of each Class Member in the same or similar fashion.

## VI.     CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Negligence

47.     Plaintiffs re-allege each of the allegations set forth in the preceding paragraphs.

48.     Defendants owed Plaintiffs and Class Members, under both the law of negligence and negligence per se, a duty to exercise reasonable care preventing their nonredacted and

unencrypted PII from access and exfiltration, theft, or disclosure by unauthorized third parties. The duties owed by Defendants to Plaintiffs and Class Members include, but are not limited to, the following duties:

a.    To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Plaintiffs' and Class Members' PII in their possession, care, custody, or control;

b.    To follow their own policies and procedures and terms of service related to privacy and the protection of Plaintiffs' and Class Members' PII, including the PBI Defendants implementing the multi-layered security protocol, audits, evaluation, and stress-testing promised on their website;

c.    To protect Plaintiffs' and Class Members' PII in their possession, care, custody, or control by using reasonable data security practices and procedures to protect that PII from reasonably preventable unauthorized or unnecessary disclosure; and

d.    To implement reasonable practices and procedures to timely detect data breaches and other data security threats, and to timely take reasonable action act in response to such detection, including promptly notifying Plaintiffs and Class Members.

49.    Defendants knew or should have known the risks of maintaining and storing PII, the importance of following published and industry-standard security protocols, and the importance of maintaining secure digital infrastructure.

50.    Through Defendants' acts and omissions described in this Complaint, Defendants failed to provide adequate security to protect Plaintiffs' and Class Members' PII from being compromised, including by unauthorized access, disclosure, theft, and exfiltration.

51.    Defendants breached their duties to Plaintiffs and Class Members by their acts and omissions, including by negligently, carelessly, and recklessly collecting, storing, transmitting, maintaining, and controlling Plaintiffs' and Class Members' PII, and by engineering, designing,

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

maintaining, and controlling systems that exposed Plaintiffs' and Class Members' PII to unreasonable risk of access and disclosure to unauthorized persons.

52.   Defendants further breached their duties to Plaintiffs and Class Members in several ways, including by:

   a.   Failing to implement adequate and reasonable security systems, protocols, and practices sufficient to protect Plaintiffs' and Class Members' PII, despite the foreseeable risk of harm of failing to implement such systems, protocols, and practices;

   b.   Failing to comply with the minimum industry security standards for data security;

   c.   Failing to act despite knowing or having reason to know that Defendants' digital infrastructure contained the kind of flaw that lead to the Data Breach and was otherwise vulnerable to attacks; and

   d.   Failing to timely and accurately disclose to Plaintiffs and Class Members that their unencrypted and unredacted PII was accessed, viewed, disclosed, exfiltrated, and stolen by unauthorized third parties.

53.   Defendants' breaches were a direct and proximate cause of Plaintiffs injuries and damages specified herein.

54.   As a result of Defendants' negligence, Plaintiffs and Class Members suffered injuries and damages that include: (i) the lost or diminished value of their PII; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized transactions, identity theft, and other unauthorized use of their PII; (iii) lost opportunity costs associated with expenditure of money, effort, and time to mitigate the consequences of the Data Breach, including but not limited to time spent deleting phishing email messages and cancelling credit cards; (iv) the continued risk to their PII, which can remain for sale on the dark web, where it is subject to further unauthorized access and disclosure; (v) future costs in terms of time, effort, and money that will be expended to prevent, monitor, detect, contest, and repair the impact of the disclosure of their PII because of the Data Breach, including ongoing credit monitoring.

55.     These injuries, which also include an invasion of privacy rights, were reasonably foreseeable given the history of security breaches of this nature.

56.     Due to Defendants' conduct, Plaintiffs and Class Members require and seek, among other things, extended credit monitoring. The Data Breach creates for Plaintiffs and Class Members an increased risk of identity theft and other types of financial harm. The consequences of identity theft are serious and long-lasting, such that there is an enormous benefit to early detection and monitoring. Plaintiffs further seek, in connection with this cause of action, all available relief specified below in their Prayer for Relief.

## SECOND CAUSE OF ACTION

### Violations of the California Consumer Privacy Act

### (Cal. Civ. Code § 1798.150)

57.     Plaintiffs re-allege each of the allegations set forth in the preceding paragraphs.

58.     At all relevant times, each Defendant was a "business," within the meaning of the California Consumer Privacy Act ("CCPA").  Defendants operate in California and collect consumers' personal information. Each Defendant either has annual operating revenue that exceeds $25 million, annually collects the personal information of at least 50,000 California residents, or derives at least 50 percent of its annual revenue from the sale of California residents' personal information.

59.      At all relevant times, Plaintiffs and Class Members have been "consumers" within the meaning of the CCPA.

60.     By the acts described above, Defendants violated the CCPA by negligently, carelessly, and recklessly collecting, storing, and transmitting Plaintiffs' and Class Members' "personal information" within the meaning of the CCPA, and by engineering, designing, maintaining, and controlling digital infrastructure that exposed Plaintiffs' and Class Members' nonredacted and unencrypted personal information to an unreasonable risk of unauthorized access and exfiltration, theft, or disclosure. In doing so, Defendants violated their respective duties to implement and maintain reasonable security procedures and practices appropriate to the nature of

1  Plaintiffs' and Class Members' personal information in Defendants' possession, custody, care, or

2  control.

3  61.  Plaintiffs have complied with the requirements of Cal. Civ. Code § 1798.150(b).

4  More than 30 days before the filing of this Complaint, Plaintiff Landi sent each Defendant a letter

5  by certified mail identifying the specific provisions that have been are or being violated by

6  Defendants, and no Defendant has cured the noticed violations. The Hurley Plaintiffs likewise sent

7  each Defendant a letter by certified mail identifying the specific provisions that have been are or

8  being violated by Defendants, but the required 30 days have not yet elapsed as of the date of the

9  filing of this Complaint. If Defendants respond to the Hurley Plaintiffs as they did to Landi, fail to

10  respond with 30 days, or otherwise fail to timely cure the noticed violations, the Hurley Plaintiffs

11  will likewise be entitled to and seek all relief available under the CCPA.

12  62.  As a result of Defendants' violations, Plaintiffs and Class Members are entitled to

13  and seek all available relief specified in their Prayer for Relief below, including but not limited to

14  all available actual, statutory, and other damages, and injunctive relief.

15  **THIRD CAUSE OF ACTION**

16  **Violations of the California Unfair Competition Law**

17  **(Cal. Bus. & Prof. Code § 17200, et seq.)**

18  63.  Plaintiffs re-allege each of the allegations set forth in the preceding paragraphs.

19  64.  Plaintiffs and Class Members bring claims against Defendants under California's

20  Unfair Competition Law ("UCL"), which prohibits Defendants from engaging in any "business act

21  or practice" that is "unlawful" or "unfair." Cal. Bus. & Prof. Code § 17200, et seq.

22  65.  Defendants engaged in "unlawful" business acts and practices by engaging in the

23  wrongful acts and practices set forth the in the First, Second, and Fourth Causes of Action in the

24  Complaint, including by failing to disclose the Data Breach to Plaintiffs and Class Members in a

25  timely manner.

26  66.  Defendants' conduct complained of herein is also "unfair" under the UCL because

27  it violated and continues to violate established public policy of the State of California, and because

28

it was and is immoral, unethical, oppressive, or unscrupulous and causes injury to Plaintiffs, Class Members, and other consumers which outweighs its benefits.

67.     As a result of Defendants' unlawful, unfair, or fraudulent business practices as alleged herein, Plaintiffs and Class Members suffered injury in fact and lost money or property, including but not limited to the loss of value in Plaintiffs' and Class Members' PII, the loss or impairment of their legally protected interest in the confidentiality and privacy of their PII, and additional losses described above.

68.     On information and belief, Defendants' unlawful and unfair business practices and acts under the UCL are continuing in nature and have not been adequately cured since the Data Breach.

69.     Plaintiffs and Class Members have no adequate remedy at law and thus, on behalf of themselves and the public, seek preliminary and permanent injunction relief against Defendants as set forth in the Prayer for Relief below.

70.     Plaintiffs and Class Members further seek, whether in the alternative or in addition to damages sought in this Complaint under other claims for relief, all available restitution in an amount to be determined at trial, including the equitable disgorgement of any profits Defendants may have obtained as a result of their unlawful or unfair conduct.

71.     Plaintiffs further seek, in connection with this cause of action, any and all further available relief set forth in the Prayer for Relief below, including but not limited to an award of their litigation costs, expert fees, and attorneys' fees under Cal. Code Civ. Proc. § 1021.5 and any other applicable law.

### FOURTH CAUSE OF ACTION

**Violations of the California Customer Records Act**

**(Cal. Civ. Code § 1798.82)**

72.     Plaintiffs re-allege each of the allegations set forth in the preceding paragraphs.

73.     At all relevant times, Defendants were "businesses" under the terms of the CRA as sole proprietorships, partnerships, corporations, associations, financial institutions, or other groups,

operating in the State of California that owned or licensed computerized data that included the personal information of Plaintiffs and Class Members.

74.     At all relevant times, Plaintiffs and Class Members were "customers" under the terms of the CRA as natural persons who provided personal information to Defendants for the purpose of purchasing or leasing a product or obtaining a service.

75.      By the acts described above, Defendants violated the CRA by allowing unauthorized access to and disclosure of Plaintiffs' and Class Members' PII and then failing to inform them for weeks or months about the unauthorized access and disclosure thereby failing in their duty to inform their customers of unauthorized access and disclosure expeditiously and without delay.

76.     As a direct consequence of Defendants' acts and omissions complained of above, Plaintiffs and Class Members incurred additional losses and suffered further harm to their privacy, including but not limited to the loss of control over the use of their identity, harm to their constitutional right to privacy, lost time dedicated to the investigation of and attempt to recover the loss of funds and cure harm to their privacy, the need for future expenses and time dedicated to the recovery and prevention of further loss and privacy injury that they would not have suffered if Defendants had timely informed them of the Data Breach.

77.     As a result of Defendants' violations, Plaintiffs and Class Members are entitled to and seek all actual and compensatory damages according to proof, non-economic injunctive relief permitted under the CRA, and all other available relief sought in the Prayer for Relief below

## FIFTH CAUSE OF ACTION

### Declaratory Relief

78.     Plaintiffs re-allege each of the allegations set forth in the preceding paragraphs.

79.     An actual controversy over which this Court has jurisdiction now exists between Plaintiffs and Class Members and Defendants concerning their respective rights, duties, and obligations. There is a justiciable controversy over the legality of Defendants' acts, omissions, and practices complained of herein.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

80. As a result of such practices, Plaintiffs and Class Members have been injured and will continue to be injured by Defendants' inadequate data security policies and practices and the continuing unremedied effects of the Data Breach. Therefore, declaratory relief is appropriate so that future controversies between the parties may be avoided by attaining judicial clarification of the parties' respective rights and obligations, including under any applicable laws or agreements under which Plaintiffs and Class Members may have enforceable third-party beneficiary rights.

81. Plaintiffs, therefore, seeks a declaration and related injunctive relief that (1) each Defendant's existing security measures do not comply with its explicit or implicit contractual obligations, law, and duties of care to provide reasonable security procedures and practices appropriate to the nature of the information to protect Plaintiffs' and Class Members' PII, and (2) to comply with their explicit or implicit contractual obligations, legal obligations, and duties of care, Defendants must implement and maintain reasonable security measures, including, but not limited to the following:

      a. engaging third-party security auditors and penetration testers, as well as internal security personnel, to conduct audits, penetration testing, simulated attacks, and other testing on Defendants' respective digital infrastructure and software on a periodic basis, and promptly correcting any problems or issues detected by such third-party security auditors;

      b. engaging third-party security auditors and internal personnel to run appropriate automated security monitoring;

      c. auditing, testing, and training their security personnel on any new or modified security practices or procedures;

      d. appropriately segmenting their software, digital infrastructure, and operations by, among other things, creating firewalls and access controls so that if the security of one area is compromised, unauthorized third parties cannot gain access to other segments of Defendants' software, digital infrastructure, or operations;

      e. conducting regular database scanning and security checks;

f.   routinely conducting internal training and education to inform internal security personnel how to identify, contain, and respond to a security breach;

g.   offering free credit monitoring services to Plaintiffs and Class Members for a period of not less than ten years;

h.   educating Plaintiffs and Class Members about the threats they face as a result of the disclosure of their PII to unauthorized third parties, and the steps Plaintiffs and Class Members should take to protect themselves; and

i.   storing and transmitting Plaintiffs' and Class Members PII in encrypted form.

## VII.   PRAYER FOR RELIEF

82.   WHEREFORE, Plaintiffs on behalf of themselves and Class Members pray for the following relief:

a.   An order certifying the proposed Class and Subclasses pursuant to Rule 23;

b.   An order appointing Plaintiffs and their counsel to represent the Class;

c.   An order preliminarily and permanently enjoining Defendants from engaging in the wrongful conduct alleged herein;

d.   All declaratory relief set forth above;

e.   An order requiring Defendants to offer Plaintiffs and Class Members free credit monitoring and other appropriate protective services;

f.   All available compensatory, statutory, and other available damages, including punitive damages under Cal. Civ. Code § 3294(c)(3) and any other appliable law, in an amount to be determined at trial;

g.   Equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendants' wrongful conduct;

h.   An award of their litigation costs, expert fees, and attorneys' fees under Cal. Code Civ. Proc. § 1021.5 and any other applicable law;

i.   Pre- and post-judgment interest as allowed by law; and

1               j.      Such other relief as the Court may deem just and proper.

## VIII.   JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: July 31, 2023

**COTCHETT, PITRE & McCARTHY, LLP**

By:   */s/ Andrew F. Kirtley*
        NIALL P. McCARTHY
        ANDREW F. KIRTLEY
        OWAIS M. BARI
        GIA JUNG

**RIGHETTI GLUGOSKI, P.C**

By:   */s/ Matthew Righetti*
        MATTHEW RIGHETTI

**WYNNE LAW FIRM**

By:   */s/ Edward J. Wynne*
        EDWARD J. WYNNE
        GEORGE R. NEMIROFF

*Attorneys for Plaintiffs and the Proposed Class*



## ATTORNEY ATTESTATION

I, Andrew F. Kirtley, am the ECF User whose ID and password are being used to file this Class Action Complaint. In compliance with Civil Local Rule 5-l(h)(3), I hereby attest that concurrence in the filing of this document has been obtained from each signatory.

Dated:  July 31, 2023

By:   _/s/ Andrew F. Kirtley_
    Andrew F. Kirtley